JOHNSON TIRE SERVICE, INC., Plaintiff, Appellant and Cross-Respondent,

v.

THORN, INC., Defendant, Respondent, and Cross-Appellant.

No. 16625.

Supreme Court of Utah.

June 13, 1980.

Layne T. Rushforth of Crook & Rushforth, Orem, for plaintiff, appellant and cross-respondent.

Steven H. Stewart, Salt Lake City, for defendant, respondent and cross-appellant.

HALL, Justice:

Plaintiff initiated this action to recover the balance owing for tires purchased by defendant on open account, together with interest and attorneys' fees. The trial court awarded summary judgment for the balance of the account, plus accrued interest, but denied any recovery of attorneys' fees. Plaintiff appeals that denial, and defendant cross-appeals, challenging the award of interest.

Plaintiff and defendant are "merchants" within the meaning of the Uniform Commercial Code,[1] plaintiff being engaged in the business of tire sales, and defendant in the ready-mix concrete business. The open account in question was established in the

---

1. U.C.A., 1953, 70A–1–101, et seq., and specifically section 70A–2–104 thereof.

late 1960's. Customarily, defendant placed an order by description and sent an agent to accept delivery which was accompanied by a "sales receipt."[2] Billings for purchases were rendered monthly.

In 1973, plaintiff altered the form of the "sales receipt" to include the following:

Title remains with seller until paid. Buyer promises to pay account at Springville, Utah. Finance charge at annual percentage rate of 18 percent charged on any amount unpaid after 30 days from date hereof. Buyer agrees to pay costs of collection, including reasonable attorney fees, with or without suit.

Through the end of 1977, plaintiff and defendant did business according to the terms of the agreement. Plaintiff applied all payments received first to interest, and then to principal, adding unpaid interest accrued to the outstanding principal. Defendant received a regular statement of the account reflecting the above procedure.

At the beginning of May, 1978, defendant's account with plaintiff showed an outstanding balance of $1,406.34. In that month, defendant ordered a pair of large equipment tires at a cost of $6,020.79. Payment on the account in the months immediately following this order were sufficiently small that, in August 1978, plaintiff met with defendant's representative, Jerry Thorn, to demand payment of the balance. Mr. Thorn agreed that defendant's account would be cleared by October. Mr. Thorn objected to the interest rate prescribed by the invoices then in use by plaintiff, although no agreement was reached altering such rate.

By February of 1979, defendant's account showed an unpaid balance of $567.70 for 1977, $7,240.44 in 1978 purchases, $950.21 in accrued interest, and payment in the amount of $1,590.26, leaving an unpaid balance of $7,168.09. Defendant failed to make payment pursuant to collection attempts by plaintiff's attorney during January of 1979, whereupon the present action was filed.

The trial court determined that the course of dealing between the parties created a contractual obligation to pay interest on any unpaid balance of the account. It further determined that there existed no such obligation by reason of course of dealing as would support an award of attorneys' fees. Moreover, the trial court ruled that, inasmuch as there was never an acceptance of such terms as part of the agreement between the parties, they were of no force and effect.[3]

Plaintiff's basic contention on appeal is that the trial court misinterpreted the provisions of the Uniform Commercial Code[4] and consequently erred in refusing to award attorneys' fees. Specifically, plaintiff asserts entitlement thereto on the basis that its sales receipt provision therefor became a binding additional contract term pursuant to the provisions of U.C.A., 1953, 70A-2-207. Alternatively, plaintiff claims the attorneys' fees as an item of incidental damages, pursuant to the provisions of U.C.A., 1953, 70A-2-710.

The said provisions of U.C.A., 1953, 70A-2-207, supra, read as follows:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the

---

2. Both parties to this appeal treat said "sales receipt" as an "acceptance or a written confirmation" within the contemplation of the provisions of U.C.A., 1953, 70A-2-207, hence we do likewise. However, we reserve judgment on that issue should we be subsequently confronted with it.

3. There existed some initial factual question regarding the status of the individual who signed the invoice on the purchase of the tires as an "authorized agent" of defendant. By stipulation of the parties, however, it was resolved that no such agency existed.

4. U.C.A., 1953, 70A-1-101, et seq.

contract. Between merchants such terms become part of the contract unless:

    (a) the offer expressly limits acceptance to the terms of the offer;

    (b) they materially alter it; or

    (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

    (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act.

The foregoing statute departs from the common law counteroffer rule in that it construes additional or different terms contained in the acceptance as proposals to modify the contract which, as between merchants, become part of the contract unless "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." Obviously, (a) and (c) are not applicable in this case. However, we deem (b) to be applicable, as apparently did the trial court.

■ The addition of a provision for attorneys' fees alters the offer materially and thus does not fall within the "additional or different terms" which the statute renders acceptable by mere silence on the part of the offeror.[5] We therefore hold that the contract in the instant case was formed on the defendant's (offeror's) terms and not plaintiff's (seller's) insofar as the attorneys' fees issue is concerned.

■ Plaintiff's further contention that attorneys' fees may be awarded as "incidental damages" is clearly without merit. The provisions of U.C.A., 1953, 70A–2–710 which it relies upon reads as follows:

    Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.

The language of the statute itself limits the damages awardable thereunder to *incidental* damages and it cannot reasonably be read to include *consequential* damages such as attorneys' fees.[6] In the absence of a valid contractual or statutory provision therefor,[7] the trial court did not err in refusing to make an award of attorneys' fees.

We have duly considered plaintiff's remaining contentions of entitlement to attorneys' fees which it bases upon course of dealing and common law principles. However, particularly when viewed in light of what has heretofore been said, we find them to be without merit.

Defendant's contention on cross-appeal is that the interest issue was a genuine issue of material fact which precluded summary judgment.[8] We do not agree.

■ The facts are uncontroverted that from 1973 onward, defendant received monthly statements which reflected the charging of interest at the rate of 18 percent per annum. Defendant made payments thereon, without objection, until August, 1978. Such period of time is adequate to support the conclusion, as a matter of law, that a course of conduct, dealing, or

---

**5.** For a similar holding involving the addition of a general arbitration provision, see *Application of Doughboy Industries, Inc.*, 17 App.Div.2d 216, 233 N.Y.S.2d 488 (1962).

**6.** In accord, *Bossier Bank & Trust Company v. Union Planters National Bank of Memphis*, 550 F.2d 1077 (6th Cir. 1977); see also 2 Anderson,

Uniform Commercial Code, Sections 2–710:3 and 2–710:4.

**7.** *Ranch Homes, Inc. v. Greater Park City Corp.*, Utah, 592 P.2d 620 (1979).

**8.** As provided for by Rule 56(c), U.R.C.P.

performance was established within the meaning of the applicable provisions of the Uniform Commercial Code[9] which read, in pertinent part, as follows:

70A–1–205. Course of dealing and usage of trade.—(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct. . . .

70A–2–208. Course of performance or practical construction.—(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement. . . .

The judgment below is affirmed. No costs awarded.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.

---

**9.** Supra, footnote 3.